1   DAVID H. KRAMER State Bar No. 168452
    AMIT Q. GRESSEL State Bar No. 307663
2   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3   650 Page Mill Road
    Palo Alto, CA 94304-1050
4   Telephone:    (650) 493-9300
    Facsimile:    (650) 565-5100
5   Email:  dkramer@wsgr.com, agressel@wsgr.com

6   BRIAN M. WILLEN (admitted *pro hac vice*)
    WILSON SONSINI GOODRICH & ROSATI
7   Professional Corporation
    1301 Avenue of the Americas, 40th Floor
8   New York, NY 10019-6022
    Telephone:  (212) 999-5800
9   Facsimile:   (212) 999-5899
10  Email:  bwillen@wsgr.com

11  *Attorneys for Defendant*
    *YouTube, LLC*
12

13              **UNITED STATES DISTRICT COURT**

14           **NORTHERN DISTRICT OF CALIFORNIA**

15              **SAN FRANCISCO DIVISION**

16

17  RIPPLE LABS INC., ET AL.,                    )   CASE NO.:  3:20-cv-02747-LB
                                                 )
18              Plaintiffs,                      )   **YOUTUBE, LLC'S NOTICE OF**
                                                 )   **MOTION AND MOTION TO**
19       v.                                      )   **DISMISS PLAINTIFFS'**
                                                 )   **COMPLAINT**
20  YOUTUBE, LLC,                                )
                                                 )
21              Defendant.                       )   Date:    August 27, 2020
                                                 )   Time:    9:30 a.m.
22                                               )   Dept.:   Courtroom B, 15th Floor
                                                 )   Before:  Magistrate Judge Laurel Beeler
23                                               )
                                                 )   Complaint filed: April 21, 2020
24  _____          )

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

STATEMENT OF REQUESTED RELIEF .............................................................................1

STATEMENT OF ISSUES...................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

FACTUAL & PROCEDURAL BACKGROUND .......................................................................3

ARGUMENT ....................................................................................................................5

I.      SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS .........................................5

        A.      Plaintiffs Seek to Treat YouTube as a publisher of Information Provided
                by Another Information Content Provider ..............................................6

II.     PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF ...........................10

        A.      YouTube Did Not Violate Plaintiffs' Right of Publicity .....................10

        B.      Plaintiffs Have No Viable Claim Under The UCL...............................12

        C.      Plaintiffs' Contributory Trademark Infringement Claim Fails ...........13

CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

<b>Page(s)</b>

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 5

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...........................................................5, 6, 7

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ................................................................. 6

*Cross v. Facebook*,
14 Cal. App. 5th 190 (2017) ..............................................................11, 12

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ................................................................... 6

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ....................................................... *passim*

*Emery v. Visa Int'l Serv. Ass'n*,
95 Cal. App. 4th 952 (2002) .................................................................. 12

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
946 F.3d 1040 (9th Cir. 2019) ............................................................... 10

*Fair Housing Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ..........................................................2, 6, 10

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ................................................................. 5

*Fleet v. CBS, Inc.*,
50 Cal. App. 4th 1911 (1996) ................................................................ 10

*Gibson v. Craigslist, Inc.*,
2009 WL 1704355 (S.D.N.Y. June 15, 2009) ............................................ 9

*Gonzalez v. Google, Inc.*,
282 F. Supp. 3d 1150 (N.D. Cal. 2017) ................................................... 9

*Gonzalez v. Google LLC*,
335 F. Supp. 3d 1156 (N.D. Cal. 2018) .............................................6, 7, 8

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ............................................................. 7

*In re Bitconnect Securities Litigation*,
    2019 WL 9104318 (S.D. Fla. Aug. 23, 2019) ................................................... 8

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    724 F.3d 1268 (9th Cir. 2013) ....................................................................... 11

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009).................................................................................. 13

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982) ...............................................................................14, 16

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .......................................................................... 9

*Joude v. WordPress Found.*,
    2014 WL 3107441 (N.D. Cal. July 3, 2014).................................................... 10

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ..............................................................5, 7, 8, 9

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .................................................................. 5, 7

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)................................................................................. 13

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015)........................................................... 13

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    194 F.3d 980 (9th Cir. 1999) ....................................................................... 14

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ..................................................................... 8

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014)............................................................. 13

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ................................................................10, 12

*Perfect 10, Inc. v. Google, Inc.*,
    2010 WL 9479060 (C.D. Cal. July 30, 2010).................................................. 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ...........................................................11, 12, 13, 14

*Prager Univ. v. Google*,
    2018 WL 1471939 (N.D. Cal. Mar. 26, 2018).................................................. 5

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015).............................................................. 6

*Spy Phone Labs v. Google Inc.* ("*Spy Phone I*"),
    2016 WL 1089267 (N.D. Cal. Mar. 21, 2016)................................. 14, 15, 16, 17

*Spy Phone Labs v. Google Inc.* ("*Spy Phone II*"),
    2016 WL 6025469 (N.D. Cal. Oct. 14, 2016) ............................................... 17

*Tiffany (NJ) Inc. v. eBay Inc.*,
    576 F. Supp. 2d 463 (S.D.N.Y. 2008) ........................................................... 16

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) .............................................................14, 16, 17

*Worldwide Media, Inc. v. Twitter, Inc.*,
    2018 WL 5099271 (N.D. Cal. Aug. 9, 2018) ................................................. 16

## STATUTES

15 U.S.C. § 1114(1) ............................................................................1, 2, 5, 13

47 U.S.C. § 230(c) ....................................................................................... *passim*

47 U.S.C. § 230(e)(2)........................................................................................ 10

Cal. Bus. & Prof. Code § 17200 ................................................................ *passim*

Cal. Civil Code § 3344.............................................................................1, 5, 10, 11

## RULES

Fed. R. Civ. P. 12.......................................................................................... 1, 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on Thursday, August 27, 2020 at 9:30 a.m. in Courtroom B, 15th Floor, United States District Courthouse, 450 Golden Gate Ave., San Francisco, California, 94102 before the Honorable Laurel Beeler Defendant YouTube, LLC ("Defendant") will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiffs' Ripple Labs Inc. and Bradley Garlinghouse Complaint.

The motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Proposed Order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

### STATEMENT OF REQUESTED RELIEF

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 47 U.S.C. § 230(c), YouTube requests that the Court dismiss Plaintiffs' claims for Violation of California's Statutory and Common Law Right of Publicity, Cal. Civil Code § 3344, Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and contributory trademark infringement under federal law, 15 U.S.C. § 1114(1).

### STATEMENT OF ISSUES

1.      Whether Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), bars Plaintiffs' state law claims.

2.      Whether Plaintiffs' Complaint should otherwise be dismissed under Rule 12(b)(6) for failure to state a claim.

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs have sued YouTube for allegedly failing to do enough to prevent third-party fraudsters from hijacking various YouTube user accounts and perpetrating a crypto-currency scam through those stolen accounts. YouTube did not orchestrate or participate in that scam, and after being notified about fraudulent content posted by the hijacked accounts, YouTube removed it. Plaintiffs' state-law claims are barred by Section 230 of the CDA, 47 U.S.C. § 230 ("Section 230"), and all their claims fail of their own accord.

Plaintiffs Ripple Labs Inc. ("Ripple") and Bradley Garlinghouse, Ripple's CEO, operate an "enterprise blockchain company" that developed and manages the cryptocurrency "XRP" and related services. In recent years, Ripple has noticed that scammers have come up with an array of schemes to defraud owners of their cryptocurrency via social media. These schemes are not unique to either Ripple's XRP cryptocurrency or YouTube's platform. But Plaintiffs believe that some of the scammers have used hijacked YouTube accounts to perpetrate their scheme and that YouTube should have done more to stop those third-parties from posting deceptive content on the service. Thus, even though YouTube itself is a victim of the scam, Plaintiffs have brought this lawsuit asserting that YouTube violated their statutory and common law right to publicity, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), and their rights under federal trademark law, 15 U.S.C. § 1114(1). Plaintiffs have not filed any claims against the actual fraudsters.

As an initial matter, Plaintiffs' state-law claims run directly into the immunity provided by Section 230. This immunity "provision [was] enacted to protect websites against the evil of liability for failure to remove offensive content." *Fair Housing Council v. Roommates.Com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc). That is precisely what Plaintiffs seek to do here. They do not contend (nor could they) that YouTube perpetrated the fraud or created any of the scam content. Instead, Plaintiffs wish to hold YouTube liable for not acting more aggressively to monitor, block, and remove the material that third-party fraudsters have posted. Section 230 categorically bars such claims and requires dismissal with prejudice of Plaintiffs' state-law causes of action.

Even apart from Section 230, Plaintiffs fail to state a viable claim. Plaintiffs' right of publicity claims fail because there is no plausible allegation that YouTube itself (as opposed to the third-party fraudsters) ever actually used Mr. Garlinghouse's identity, and under established law it is not enough to allege that YouTube merely contributed to or aided the purported misappropriation. Similarly, Plaintiffs cannot support a claim under the UCL because all of their allegations are directed at frauds committed by third-parties, and the UCL does not create a cause of action for what is effectively secondary liability. Finally, in an attempt to make an end-run

1   around Section 230, Plaintiffs assert that YouTube is liable for contributorily infringing Ripple's

2   federally registered trademarks. But Plaintiffs do not allege that YouTube had knowledge of any

3   specific instances of trademark infringement that it failed to remove, and as a matter of law

4   YouTube had no affirmative obligation to preemptively seek out and remove potentially

5   infringing content. For these reasons, all of Plaintiffs' claims should be dismissed.

6                           **FACTUAL & PROCEDURAL BACKGROUND**

7           YouTube offers a popular online platform that allows users to upload and view videos

8   and related content. Compl. ¶¶ 27-29. People all around the world disseminate videos on their

9   YouTube channels, and many individuals earn money through advertising that can appear

10  alongside their videos. *Id*. ¶ 29. Plaintiffs make no allegation that YouTube in any way condones

11  or encourages scams or fraudulent activities. To the contrary, as Plaintiffs acknowledge,

12  YouTube's Community Guidelines expressly prohibit "scams" and "other deceptive practices

13  that take advantage of the YouTube Community," and YouTube enforces those rules by

14  removing offending content when it comes to YouTube's attention. *Id*. ¶¶ 30-31.

15          Ripple is a blockchain company focused on providing a global payments network. *Id*. ¶

16  12. Bradley Garlinghouse is the CEO and "public face" of Ripple. *Id*. ¶ 22. Ripple offers a

17  variety of software products aimed at providing financial tools for banks and corporations to

18  facilitate international transactions. *Id*. ¶ 20. Ripple does so by touting the use of "XRP", a

19  "digital asset" that Ripple created using open-source, distributed ledger technology. *Id*. ¶ 21. In

20  simple terms, Ripple has created a digital currency that can be used "quickly and securely," in

21  place of traditional currencies by banks and corporations. *Id*. ¶ 19. As a digital currency, XRP

22  can also be purchased by individuals for personal uses. Ripple touts that XRP is designed to

23  "facilitate interbank communications and transaction settlement, source liquidity for financial

24  institutions," and allow for "banks" to "seamlessly and transparently make global payments." *Id*.

25  ¶ 20. This design also apparently makes Ripple's XRP particularly susceptible to being misused

26  in scams as well.

27          According to Plaintiffs' Complaint, certain unknown individuals have perpetrated a scam

28  on YouTube through a series of steps. *First*, the scammers target the accounts of popular

1   YouTube users through a "spear-phishing" attack whereby they gain access to the user's login

2   credentials. *Id.* ¶¶ 34-36. This attack is generally done via email or text message, separate from

3   the YouTube platform. *Id.* ¶¶ 34-36. *Second*, the scammers use those stolen credentials to hijack

4   the account and strip the YouTube channel of its existing content, replacing it with material that

5   makes it appear as if the channel is associated with or created by Ripple or Mr. Garlinghouse. *Id.*

6   This can involve the scammers uploading new videos (often repurposing videos from other

7   sources, including from media appearances by Mr. Garlinghouse) to the channel, changing the

8   channel's name, and/or changing identifying images to display pictures of Mr. Garlinghouse,

9   Ripple, or XRP. *Id. Third*, in the text description of the videos posted on the channel, the

10   scammers will suggest that if viewers wish to "participate in the Giveaway" they can send a sum

11   of XRP to a specific virtual wallet and will receive a greater amount in return. *Id.* ¶ 35. Once the

12   deceived viewer sends the currency, "their XRP is gone" with nothing in return, and it seems that

13   Ripple, because of the design of its system, has no ability to recover or return the XRP that the

14   victims of the scam have transferred to the fraudsters. *Id.*

15       Plaintiffs do not allege that YouTube has any relationship with the scammers, that

16   YouTube itself participated in or encouraged the scam, or that it created any of the allegedly

17   fraudulent content used to perpetrate the scam. Instead, Plaintiffs claim that YouTube

18   unwittingly perpetrates the scam by "serving as a primary platform host" and by allegedly

19   allowing third-parties to purchase and run advertisements relating to the scam. *Id.* ¶¶ 36-37.

20   Plaintiffs also fault YouTube for supposedly responding "belatedly" to the fraud and for not

21   taking proactive steps to stop the scammers from posting misleading content. *Id.* ¶¶ 27-33, 48.

22   Plaintiffs acknowledge that YouTube's Community Guidelines prohibit frauds and deceptions

23   like this (*id.* ¶ 31), and the Complaint makes clear that when Plaintiffs (or their agents) flagged

24   instances of scam content, or of hijacked accounts that were perpetrating the scam, YouTube

25   consistently removed that material (*id.* ¶ 48).[1] But Plaintiffs believe that YouTube, on occasion,

26

27   ────────────────────

28       [1] Although Plaintiffs allege that they submitted hundreds of takedown requests to YouTube
    (*id.* ¶ 48), nowhere does the Complaint allege that Plaintiffs or their agents ever submitted a
    (continued...)

1    did not respond fast enough to Plaintiffs' complaints and that YouTube should have done more

2    on its own to find and remove scam content that Plaintiffs had not specifically brought to

3    YouTube's attention. *Id.* ¶¶ 48-53.

4         Based on these allegations, Plaintiffs filed this lawsuit. The Complaint alleges state law

5    claims against YouTube for violations of California's statutory and common law right of

6    publicity, Cal. Civil Code § 3344, California's Unfair Competition Law, Cal Bus. & Prof. Code

7    § 17200, and a claim for federal trademark infringement, 15 U.S.C. § 1114(1).

8                                    **ARGUMENT**

9         To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause

10   of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.

11   662, 678 (2009). Instead Plaintiffs must allege "factual content that allows the court to draw the

12   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is not

13   required to "assume the truth of legal conclusions merely because they are cast in the form of

14   factual allegations." *Prager Univ. v. Google*, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018)

15   (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)). It is well settled that Section

16   230(c)(1) is a proper basis for dismissing claims under Rule 12(b)(6). *See, e.g.*, *Dyroff v.*

17   *Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019); *Kimzey v. Yelp! Inc.*, 836

18   F.3d 1263, 1268 (9th Cir. 2016); *accord Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir.

19   2014) (explaining that dismissal under Section 230 is proper when "the statute's barrier to suit is

20   evident from the face of the complaint").

21   **I.    SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS**

22        Section 230 "protects certain internet-based actors from certain kinds of lawsuits."

23   *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009). The specific provision at issue here,

24   Section 230(c)(1), "protects websites from liability under state or local law for material posted

25   on their websites by someone else." *Dyroff*, 934 F.3d at 1097 (quoting *Doe v. Internet Brands,*

26

27        (...continued from previous page)

28   notice through YouTube's dedicated system for processing trademark infringement claims
     (https://support.google.com/youtube/answer/6154228?hl=en) (last visited July 15, 2020)).

1  *Inc.*, 824 F.3d 846, 850 (9th Cir. 2016)). It does so by barring any claims that would "treat" the

2  provider of an "interactive computer service" as the "speaker or publisher" of information

3  provided "by another information content provider." 47 U.S.C. § 230(c)(1); *accord Doe,* 824

4  F.3d at 850 ("section 230(c)(1) precludes liability that treats a website as the publisher or speaker

5  of information users provide on the website"). In enacting this provision, Congress recognized

6  that "[m]aking interactive computer services and their users liable for the speech of third parties

7  would severely restrict the information available on the Internet." *Batzel v. Smith*, 333 F.3d 1018,

8  1027-28 (9th Cir. 2003). At its core, therefore, Section 230(c)(1) was "enacted to protect

9  websites against the evil of liability for failure to remove offensive content." *Roommates.com*,

10  521 F.3d at 1174. That is precisely what Plaintiffs' claims here seek to do.

11      **A.      Plaintiffs Seek to Treat YouTube as a Publisher of Information Provided by**

12              **Another Information Content Provider**

13      There is an established three-prong test for immunity under Section 230. "Immunity from

14  liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff

15  seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information

16  provided by another information content provider.' When a plaintiff cannot allege enough facts

17  to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff*, 934 F.3d at

18  1097 (quoting *Barnes*, 570 F.3d at 1100). YouTube readily meets this test.

19      *First*, YouTube is the provider of an "interactive computer service," because it "provides

20  or enables computer access by multiple users to a computer service." *Sikhs for Justice "SFJ",*

21  *Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015); *accord Dyroff*, 934 F.3d at

22  1097 ("Websites are the most common interactive computer services."); *Gonzalez v. Google*

23  *LLC*, 335 F. Supp. 3d 1156, 1169 (N.D. Cal. 2018) (holding that YouTube is an interactive

24  computer service), *appeal docketed*, No.18-16700 (9th Cir. Sep. 10, 2018).

25      *Second*, it is equally clear that Plaintiffs' claims seek to treat YouTube as the publisher of

26  the scam content. What matters here is not the "name of the cause of action"; instead, "courts

27  must ask whether the duty that the plaintiff alleges the defendant violated derives from the

28  defendant's status or conduct as a 'publisher or speaker.' If it does, Section 230(c)(1) precludes

1      liability." *Barnes*, 570 F.3d at 1102. Whether couched as claims for violation of the right of

2      publicity or the UCL, what Plaintiffs seek to attack is YouTube's decision to publish—or fail to

3      block or more quickly remove—certain videos and related content on its online platform. Compl.

4      ¶¶ 5-6, 27-31, 48-50. Through these claims, Plaintiffs attempt to hold YouTube liable for the

5      content of allegedly unlawful content posted on its website. That falls squarely within Section

6      230's protections. *See, e.g., Kimzey v. Yelp! Inc*., 836 F. 3d 1263, 1268 (9th Cir. 2016)

7      ("Kimzey's claims are premised on Yelp's publication of Sarah K's statements and star rating. In

8      other words, the claim is directed against Yelp in its capacity as a publisher or speaker.");

9      *Barnes*, 570 F.3d at 1103 (applying Section 230(c)(1) to claims alleging negligent failure to

10     remove content; "removing content is something publishers do, and to impose liability on the

11     basis of such conduct necessarily involves treating the liable party as a publisher of the content it

12     failed to remove"); *Gonzalez*, 335 F. Supp. 3d at 1170-75 (holding YouTube immune for

13     allegedly failing to remove terrorist content); *Herrick v. Grindr LLC*, 765 F. App'x 586, 590-91

14     (2d Cir. 2019) (applying Section 230 to reject claims against online service for failing to stop

15     third-party from impersonating plaintiff on the platform).

16          *Third*, Plaintiffs' claims are based on content that third-parties created, developed, and

17     uploaded to YouTube. There is no allegation (nor could there be) that *YouTube* perpetrated the

18     scam, or that it created or materially contributed to any of the allegedly fraudulent content

19     published by the scammers. To the contrary, the Complaint makes clear that unknown third-

20     parties (whom Plaintiffs have chosen not to try to identify or sue) took control of certain users'

21     YouTube accounts, changed the content, and uploaded material that Plaintiffs allege improperly

22     impersonated Mr. Garlinghouse or otherwise perpetrated the scam. Compl. ¶¶ 3, 34-35, 51-53.

23     This effort to hold YouTube liable for publishing or failing to remove third-party content is

24     squarely barred by Section 230(c)(1). *See, e.g.*, *Dyroff*, 934 F.3d at 1098 ("The third prong is

25     also met because, as stated previously and as detailed in Plaintiff's complaint, the content at

26     issue was created and developed by Greer and his drug dealer."); *Klayman*, 753 F.3d at 1358

27     ("the complaint nowhere alleges or even suggests that Facebook provided, created, or developed

28     any portion of the content that Klayman alleges harmed him"); *Gonzalez*, 335 F. Supp. 3d at

1   1173 (YouTube not "information content provider" of videos allegedly posted by third-party

2   terrorist organizations); *cf. Kimzey*, 836 F.3d at 1268-69 (rejecting suggestion that "CDA

3   immunity could be avoided simply by reciting a common line that user-generated statements are

4   not what they say they are").

5       Indeed, this is not the first case seeking to hold YouTube liable for allegedly not doing

6   enough to prevent third-party scammers from posting fraudulent material relating to

7   cryptocurrency. In *In re Bitconnect Securities Litigation*, 2019 WL 9104318, at *12-13 (S.D. Fla.

8   Aug. 23, 2019), the plaintiffs alleged that they were victims of a Ponzi scheme promoted, in part,

9   through YouTube videos touting fraudulent cryptocurrency investments. The court had little

10  trouble finding that plaintiffs' claim—which was based on the theory that YouTube failed to

11  warn them about the scam and to remove videos promoting it—was "thoroughly foreclosed" by

12  Section 230(c)(1). That was so even though YouTube was alleged to have provided the

13  fraudsters "with an extraordinary reach" (including by participating in a "Partner" program that

14  allegedly helped direct traffic to the misleading videos) and to have "profited significantly from

15  the expose of its users to videos advertising Defendants' purported Ponzi scheme." *Id.*; *accord*

16  *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1266 (D.C. Cir. 2019) (Section

17  230(c)(1) barred claims against Google and other search engines alleging that they allowed third-

18  party scammers to post listings that "they know are seriously inaccurate or even nonexistent to

19  induce both legitimate and scam locksmiths to participate in paid [advertised] results to

20  overcome the false information"). Plaintiffs' claims here are barred for the same reason.

21      Perhaps trying to evade this obvious conclusion, Plaintiffs allege that, in addition to

22  hosting videos, YouTube also allowed the scammers to run advertisements that appeared on the

23  platform. Compl. ¶ 37. But this does not make YouTube into the "creator or developer" of the

24  scam content under Section 230. There is no allegation that YouTube itself created the

25  advertisements at issue or in any way contributed to their content. *See Dyroff*, 934 F.3d at 1099

26  (service providers do not become developers of content unless they "materially contribute" to

27  "the alleged unlawfulness of the content). Instead, the ads are third-party content. Compl. ¶ 37

28  (alleging that the "ads were presented to YouTube by the scammers"). Just like the publication of

third-party videos, the publication of third-party ads is squarely protected by Section 230(c)(1). *See, e.g.*, *Gibson v. Craigslist, Inc.*, 2009 WL 1704355, at *4 (S.D.N.Y. June 15, 2009) (Craigslist immune for "its alleged failure to block, screen, or otherwise prevent the dissemination" of third-party's advertisement). And whether YouTube "approved" or "endorsed" the ads by allowing them to be published (Compl. ¶ 37) is immaterial. *See Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415 (6th Cir. 2014) (rejecting argument that "when an interactive computer service provider adds commentary to third-party content that 'ratifies or adopts' that content, then the provider becomes a 'creator' or 'developer' of that content and is not entitled to the CDA's protection").

Unsurprisingly, therefore, courts have repeatedly rejected similar efforts to transform service providers into content developers. In *Kimzey*, the Ninth Circuit rejected the argument that Yelp could be held liable for "republishing" third-party content "as advertisements or promotions on Google"—because "this action does not change the origin of the third-party content." *Kimzey*, 836 F.3d at 1270. "Simply put," the court explained, "proliferation and dissemination of content does not equal creation or development of content." *Id.* at 1271. Likewise, Judge Ryu rejected arguments that YouTube's display of targeted advertising amounted to content development. *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1167-68 (N.D. Cal. 2017) ("This theory finds no support in the case law."), *appeal docketed*, No.18-16700 (9th Cir. Sep. 10, 2018). Plaintiffs' advertising-related allegations fare no better here.[2]

---

[2] Plaintiffs also allege that YouTube allowed one account used in the scam to have a "verification badge" and, in other cases, was deceived by the scammers into vertifying certain scam accounts (which allowed those accounts additional privileges). Compl. ¶¶ 40-43. But these allegations do not change third-party content into material that YouTube created or developed. *Kimzey* is directly on point: the Ninth Circuit held that Yelp's implementation of a "star" rating system did not make it a content developer responsible for an alleged defamatory user review. 836 F.3d at 1268 (9th Cir. 2016); *accord Dyroff*, 934 F.3d at 1099 (service provider did not become content developer by recommending content to users); *Jones*, 755 F.3d at 416-17 (Section 230 "bars claims lodged against website operators for their editorial functions, such as the posting of comments concerning third-party posts, so long as those comments are not themselves actionable"). Plaintiffs do not allege, nor could they, that YouTube's unwitting verification of scam accounts was itself unlawful or that it made a "material contribution" to the illegality of the scammers' content.

* * *

Sitting en banc, the Ninth Circuit explained that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71. That is exactly this case, and it requires dismissal of Plaintiffs' state-law claims. And because there is no way for Plaintiffs to plead around Section 230 immunity, dismissal of those claims should be with prejudice.[3]

## II.     PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF

Even apart from the protections afforded by Section 230, Plaintiffs cannot state a viable claim under California's right of publicity regime, the UCL, or for trademark infringement under federal law. Through these claims, Plaintiffs are seeking to advance theories of liability that the relevant causes of action simply do not contemplate.

### A.     YouTube Did Not Violate Plaintiffs' Right of Publicity

The elements of a right-of-publicity claim under California common law are: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Joude*, 2014 WL 3107441, at *6 (quoting *Fleet v. CBS, Inc.,* 50 Cal. App. 4th 1911, 1918 (1996)). Such a claim under Civil Code § 3344 requires a plaintiff to prove "all the elements of the common law cause of action" plus "a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1273 n.4 (9th Cir. 2013); *accord Perfect 10,*

---

[3] Plaintiffs may try to argue that their state-law claims fall within Section 230's exception for intellectual property claims. 47 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."). Any such argument is foreclosed. The Ninth Circuit has squarely held that this exception applies only to *federal* intellectual property claims. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007); *see also Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019) (reaffirming *CCBill*, and explaining that "the intellectual property exception in § 230(e)(2) was not intended to cover intellectual property claims brought under state law"). In fact, *CCBill* itself involved a claim brought under the same state-law right of publicity invoked here, which the court found barred by Section 230(c)(1). *Accord Joude v. WordPress Found.*, 2014 WL 3107441, at *7 (N.D. Cal. July 3, 2014) (Beeler, J.) (dismissing California right of publicity claim as barred under Section 230).

1  *Inc. v. Google, Inc.*, 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010) ("[I]n order to prove a

2  right of publicity claim under section 3344, a plaintiff must show that the defendant appropriated

3  the plaintiff's name or likeness for commercial purposes, and there must be a direct connection

4  between the defendant's use of the likeness and that commercial purpose.").

5      Here, any right of publicity claim fails for an obvious reason: Plaintiffs do not (and

6  cannot) allege that YouTube itself "used" Mr. Garlinghouse's identity. As discussed above, there

7  is no allegation that YouTube created or uploaded any of the scam videos. To the contrary, the

8  essence of Plaintiffs' claim is that "[s]cammers use Mr. Garlinghouse's identity." Compl. ¶ 77.

9  At most, Plaintiffs allege that YouTube gave "assistance or encouragement" to the scammers by

10 providing them access to the YouTube platform and because YouTube supposedly "awarded a

11 verification badge" to one hacked channel. Compl. ¶¶ 82-83. Under California law, a claim such

12 as this does not lie against YouTube. *Cross v. Facebook*, 14 Cal. App. 5th 190, 266 (2017), is

13 directly on point. The plaintiff there similarly alleged that Facebook violated his right of

14 publicity by allowing third-parties to create Facebook pages using his name and likeness. *Id.* The

15 Court of Appeal rejected this claim. It explained that the "gravamen of Knight's complaint is that

16 Facebook displayed unrelated ads from Facebook advertisers adjacent to the content that

17 allegedly used Knight's name and likeness—content, Knight concedes, created by third party

18 users." *Id.* at 266-67. But, the plaintiff could not "offer any evidence that Facebook used his

19 name or likeness in any way." *Id.*

20      *Perfect 10 v. Google*, *supra*, similarly rejected a right of publicity claim against Google

21 that was based on allegations that Google hosted and supplied advertisements for third-party

22 websites that displayed models' names and likenesses. 2010 WL 9479060, at *13-14. As the

23 court explained, "[c]ontributing' to someone's violation of something is not the same as actually

24 'violating' it. P10 has not shown that Google is, in fact, inappropriately *using* the models'

25 likenesses." *Id.* at *40; *accord Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th

26 Cir. 2007) (rejecting claim for aiding and abetting right of publicity violation as unsupported by

27 California law).

28

So too here. Just as in *Cross* and the *Perfect 10* cases, Plaintiffs allege that YouTube allows content (whether videos or advertisements) created by the third-parties to be displayed on its service in ways that Plaintiffs say violate their publicity rights. But, just as in those cases, Plaintiffs have not, and could not, allege that *YouTube itself* created any of the content that allegedly used Mr. Garlinghouse's likeness. Indeed, as Plaintiffs acknowledge, YouTube consistently *removed* the third-party content that Plaintiffs complained about as violating Mr. Garlinghouse's rights. Compl. ¶ 48. Even if, as Plaintiffs allege, YouTube did not do so in every instance as promptly as Plaintiffs might have desired, that does not remotely establish that *YouTube* itself was using Mr. Garlinghouse's name or likeness, much less that YouTube did so for YouTube's own advantage or benefit. "[A]ny right of publicity claims fail for this reason alone." *Cross*, 14 Cal. App. 5th at 267.

### B.     Plaintiffs Have No Viable Claim Under The UCL

The same problem dooms Plaintiffs' claim under the UCL. Like their right of publicity claims, the Plaintiffs' UCL claim is based on a theory of secondary liability. Plaintiffs do not allege that YouTube itself solicited, encouraged, or participated in the third-party fraudsters' scam. The Complaint points to no false or misleading statement that YouTube itself made, nor any unscrupulous business practice that YouTube instigated. Instead, Plaintiffs allege that YouTube "provide[s] substantial assistance and encouragement" to the third-party scammers (Compl. ¶ 91), repeating their basic theory that YouTube provides a platform that unidentified fraudsters supposedly used to perpetrate a scam and that YouTube did not act quickly or aggressively enough to stop those third-parties from misusing YouTube's service. *Id.* ¶¶ 34-36, 91-98.

This is not a viable basis for a UCL claim. The Ninth Circuit has expressly held that an "**unfair practices claim under section 17200 cannot be predicated on vicarious liability**." *Perfect 10 v. Visa*, 494 F.3d at 808 (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002)) (emphasis added). Instead, "[a] defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." *Id*. In so holding, the court made clear that California

law "precludes liability" based on the UCL "both under secondary liability and aiding and abetting theories." *Id*. Just as with the right of publicity claim, therefore, Plaintiffs cannot invoke the UCL to hold YouTube liable for supposedly facilitating the scammers fraud or for failing to do enough to stop them from perpetrating their scheme. Such a claim fails as a matter of law.

Beyond that, any claim under the UCL's fraud prong fails because Plaintiffs do not allege that they actually relied on any fraudulent statements. The UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). A plaintiff "must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 n.10 (2011). Plaintiffs do not even try to offer such an allegation here. Nor could they. Neither Ripple nor Mr. Garlinghouse were deceived by the scammer's scheme, and they certainly did not rely to their detriment on any purported misrepresentations made by those scammers—much less by YouTube itself. Nor can Plaintiffs invoke the possible reliance by third-parties who were deceived by the alleged scammers: it is well settled that the UCL requires a showing of *individual* reliance *by the plaintiffs*. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) ("UCL fraud plaintiffs must allege their own reliance—not the reliance of third parties—to have standing under the UCL"); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866–67 (N.D. Cal. 2015) (granting motion to dismiss where plaintiffs "lack standing to seek relief under the UCL's fraud prong" because they "do not plead their own reliance on Uber's allegedly false advertising"). For this reason as well, Plaintiffs' UCL claim must be dismissed.

### C.    Plaintiffs' Contributory Trademark Infringement Claim Fails

Ripple's contributory trademark infringement claim under 15 U.S.C. 1114(1) is fatally flawed. "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement." *Visa*, 494 F.3d at 806. To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with

knowledge that the infringer is mislabelling the particular product supplied." *Id.* at 807. (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)). Where the defendant provides a service as opposed to a product, courts must "consider the extent of control exercised by the defendant over the third party's means of infringement." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). Here, Plaintiffs do not allege that YouTube intentionally induced any third-party to infringe on Ripple's trademarks. Instead, they rely on the second theory: Plaintiffs allege that scammers have used fake or hacked accounts to infringe and that "YouTube continues to provide its platform and services to the Scammers." Compl. ¶¶ 62-63, 72. This claim fails.

Other than a threadbare conclusory allegation (*id.* ¶ 72) that the Court is not required to take as true (*see Spy Phone Labs v. Google Inc.*, 2016 WL 1089267, at *4 n.55 (N.D. Cal. Mar. 21, 2016) ("*Spy Phone I*")), the Complaint offers nothing to suggest that YouTube had the degree of knowledge needed for a claim of contributory trademark infringement or that YouTube failed to act when it was supplied with the requisite knowledge. In the context of online platforms like YouTube, the law is clear that "a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some ***contemporary knowledge of which particular listings are infringing or will infringe*** in the future is necessary." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) (emphasis added); *accord Spy Phone I*, 2016 WL 1089267, at *4 (applying *Tiffany's* particularized knowledge standard to dismiss contributory infringement claim against Google). Plaintiffs try to satisfy the knowledge requirement in several ways, but none succeeds.

Plaintiffs first allege that YouTube had knowledge based on Ripple's "repeated takedown notices." Compl. ¶ 65. But, as the Complaint acknowledges, whenever Ripple brought particular items to YouTube's attention, YouTube removed that content. *Id.* ¶ 47-48. Plaintiffs do not point to a single account or piece of content identified in Ripple's takedown notices that YouTube failed to remove.[4] For example, Plaintiffs allege that "Ripple, its security vendor, and/or

---

[4] Plaintiffs say that they "submitted 49 takedown demands to YouTube that relate directly to the Scam" (along with 305 other takedown demands), but they do not allege that YouTube failed
(continued...)

1    Plaintiffs' other agents have reported to YouTube that the hacked accounts are infringing on

2    Ripple's marks. Yet many accounts continue to infringe on Ripple's protected marks while

3    perpetuating and profiting from the Scam." *Id.* ¶ 66. Conspicuously missing, however, is any

4    allegation that the accounts that Plaintiffs say are continuing to infringe are ones that Ripple or

5    its agents ever actually identified as infringing in their notices.

6         Plaintiffs only exacerbate this problem by lumping together notices that identified

7    different issues with the scammers' content. For example, Plaintiffs allege that they sent various

8    takedown demands "in connection with accounts and channels that were impersonating Mr.

9    Garlinghouse *or* infringing on Ripple's brand, likely for the purpose of monetizing the Scam."

10   Compl. ¶ 47 (emphasis added). While the Complaint does not allege that YouTube failed to

11   remove content based on those notices, Plaintiffs' failure to distinguish complaints about

12   impersonation of Mr. Garlinghouse (which is not trademark infringement) from complaints about

13   actual trademark violations further undermines their claim that YouTube had knowledge of the

14   alleged trademark violations.

15        In *Spy Phone I*, for example, Judge Grewal rejected a similar effort to conflate fraud

16   complaints with trademark notice. That case involved allegedly infringing apps listed in

17   Google's Play Store. Using "Google's online complaint form," the plaintiff submitted numerous

18   "trademark infringement complaints about similarly named apps, and Google regularly

19   responded by taking down the offending apps." 2016 WL 1089267, at *1. Later, the plaintiff

20   submitted additional complaints about other apps, but instead of using the trademark form, the

21   plaintiff asserted that the apps were violating Google's anti-spyware policy. *Id.* at *2. Judge

22   Grewal found that these complaints did not create knowledge of trademark infringement:

23   "spyware complaints are not the same as trademark complaints, and Google could not be

24

25        (...continued from previous page)

26   to respond to *any* of those demands. Compl. ¶ 47. Moreover, while Plaintiffs point to certain
     channels that they say YouTube was slow to remove in response to Plaintiffs' takedown notices

27   (*id.* ¶ 48), they do not allege that any of those channels contained material that actually violated
     Ripple's trademarks—much less that Plaintiffs' notices specifically identified those channels as

28   trademark infringing.

expected to respond to a complaint about one offense by investigating another." *Id.* at *3-4. Similarly, in *Worldwide Media, Inc. v. Twitter, Inc.*, which arose from hacked Twitter accounts used to disseminate fraudulent content, Judge DeMarchi rejected the claim that Twitter had knowledge of trademark infringement based on complaints about the hacking that did not specifically assert a trademark violation. 2018 WL 5099271, at *3 (N.D. Cal. Aug. 9, 2018). The court explained that "allegations that Twitter had general knowledge or reasons to believe that some hacking could result in trademark infringement are not enough to support a claim for contributory infringement." *Id.* So too here. Plaintiffs cannot make out a claim of contributory trademark infringement based on notices that eschewed YouTube's trademark notification process and did not expressly allege trademark infringement.[5]

Perhaps recognizing this, Plaintiffs apparently base their claim on the idea that—even if YouTube removed the content actually identified in Ripple's takedown notices—the notices made YouTube *generally* aware of the scam, such that it was required to remove accounts or material that Ripple never actually identified as infringing. Compl. ¶ 65. This argument fails as a matter of law. "Notice of certain acts of infringement does not imply generalized knowledge of—and liability for—others." *Spy Phone I*, 2016 WL1089267, at *3. Plaintiffs cannot create the specific knowledge of infringement required for contributory liability based on notices that identified other content as infringing. *Tiffany* rejected this exact theory. The Second Circuit affirmed the district court's holding that "while eBay clearly possessed general knowledge as to counterfeiting on its website, such generalized knowledge is insufficient under the *Inwood* test to impose upon eBay an affirmative duty to remedy the problem." *Tiffany*, 600 F.3d at 107, *affirming* 576 F. Supp. 2d 463, 507 (S.D.N.Y. 2008). That Tiffany had sent notices that identified certain listings as infringing did not create knowledge that *other* listings were infringing or require eBay to find and remove such unidentified material. *Id.* at 109 ("[A]lthough

---

[5] For the same reason, Plaintiffs' allegation that "media sources have publicly reported that YouTube hosts fake Ripple accounts that perpetuate, promote, and profit from the Scam" (*id.* ¶ 67) is plainly insufficient. This is not remotely akin to an allegation that YouTube continued to provide service to particular accounts that it knew were infringing Ripple's trademarks.

the NOCIs and buyer complaints gave eBay reason to know that certain sellers had been selling counterfeits, those sellers' listings were removed and repeat offenders were suspended from the eBay site. Thus Tiffany failed to demonstrate that eBay was supplying its service to individuals who it knew or had reason to know were selling counterfeit Tiffany goods.").

Applying *Tiffany* to allegations of contributory infringement in Google's Play Store for online apps, Judge Westmore squarely rejected the argument that "Google had a duty to preemptively remove apps that infringed on Plaintiff's trademark." *Spy Phone Labs v. Google Inc.,* 2016 WL 6025469, at *6 (N.D. Cal. Oct. 14, 2016) ("*Spy Phone II*"). That was so even after plaintiff's complaints put Google generally "on notice" of potential infringement on the Play platform. *Id*. As the court explained:

> Plaintiff argues Google is like a flea market operator who has been put on notice that a particular vendor is selling counterfeit goods, but continues to allow that vendor to sell counterfeit goods. Not so. Plaintiff seeks to require the flea market operator not to just police specific vendors who it has been put on notice of selling counterfeit goods, but to also preemptively check over the goods of every vendor to ensure they are not also selling counterfeit goods. This is the type of generalized notice that *Tiffany* rejected.

*Id.*; *accord Spy Phone I,* 2016 WL 1089267, at *4 ("[a]bsent specific notice of trademark infringement, Google cannot be liable for failing to remove infringing apps preemptively").

The same is true in this case. Plaintiffs' suggestion that because they complained about certain content, YouTube had an obligation to monitor its service to find and remove other content that might have been misusing Ripple's trademarks (*e.g.*, Compl. ¶ 50) simply is not a viable basis for contributory trademark infringement. YouTube cannot be held liable for failing to proactively prevent unidentified third-party infringement.

## CONCLUSION

Plaintiffs' state law claims are barred by Section 230. Beyond that, Plaintiffs fail to state a viable claim for any of their causes of action. For these reasons, the Complaint should be dismissed, and at least as to the claims barred by Section 230, dismissal should be with prejudice.

1    Dated:  July 20, 2020                          WILSON SONSINI GOODRICH & ROSATI
                                                    Professional Corporation
2

3

4                                                   By:    */s/ Brian M. Willen*
                                                           Brian M. Willen
5
                                                    Attorneys for Defendant
6                                                   YOUTUBE LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28