1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RIPPLE LABS INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE LLC,<br><br>Defendant. | Case No. 20-cv-02747-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 26 |

## INTRODUCTION

The plaintiffs, Ripple Labs and its CEO Bradley Garlinghouse (collectively, "Ripple"),

developed a cryptocurrency called XRP. Scammers impersonated Ripple on YouTube (in part by

using Ripple's federally registered trademarks and publicly available content such as interviews

with Mr. Garlinghouse) to make it look like they were Ripple and thus perpetuated a fraudulent

"giveaway," promising that if XRP owners sent 5,000 to one million XRP to a "cryptocurrency

wallet," then the XRP owners would receive 25,000 to five million XRP. In fact, the XRP owners

who responded to the scam lost their XRP and received no XRP in return. The plaintiffs sued

defendant YouTube for not doing enough to address the scam (including by failing to respond to

multiple takedown notices), claiming the following: (1) contributory trademark infringement in

violation of the Lanham Act, 15 U.S.C. § 1114(1) (by allowing use — and therefore infringement

— of Ripple's trademarks); (2) misappropriation of Ripple's CEO's identity and thus his right of

ORDER – No. 20-cv-02747-LB

publicity, in violation of Cal. Civil Code § 3344 and California common law; and (3) a violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200, predicated on the trademark and state-law claims.[1]

YouTube moved to dismiss (1) the Lanham Act claim in part on the ground that the plaintiffs did not plausibly plead its knowledge of the trademark infringement, and (2) the state-law claims on the ground that it is immune from liability under § 230(c)(1) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), because it is not a content provider.[2] The court grants the motion (with leave to amend).

### STATEMENT

Ripple is an "enterprise blockchain company" that developed and manages the cryptocurrency XRP, which can be used in place of traditional currencies to facilitate cross-border payments.[3] Banks, corporations, and individuals buy XRP.[4]

YouTube is a video-sharing platform.[5]

Ripple and XRP owners were the target of a fraud — the XRP Giveaway Scam — whereby the fraudsters hijacked other users' channels on YouTube and used the channels to impersonate Ripple and its CEO. (Fraudsters can hijack a legitimate YouTube channel through a spear-phishing attack: the fraudsters send an email to the channel's creator, and when the creator responds, he inadvertently discloses his YouTube credentials, thereby allowing the fraudsters to take over his channel and populate its content.) After hijacking the channels, the fraudsters populated the channels with content that included Ripple's trademarks (such as its logo and name), Mr. Garlinghouse's name and likeness, and publicly available content (such as interviews with Mr. Garlinghouse or other members of Ripple's leadership team). Masquerading as Ripple, the

---

[1] Compl. – ECF No. 1 at 17–21 (¶¶ 61–99). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 26.

[3] Compl. – ECF No. 1 at 4 (¶¶ 12, 19), at 5 (¶¶ 20–21).

[4] *Id.* at 4–5 (¶¶ 19–20).

[5] *Id.* at 6 (¶ 27).

fraudsters promised XRP owners that if they sent between 5,000 to one million XRP to a digital wallet, then they would receive between 25,000 to five million XRP. After XRP owners sent XRP to the digital wallet, the currency disappeared, and the XRP owners received nothing in return.[6]

Ripple and YouTube users alerted YouTube about the scam, but YouTube allegedly did not respond by taking down the offending content in a reasonable time frame. A Forbes article in November 2019 reported the scam, the hijacking of popular YouTube creator MarcoStyle's channel, the conversion of his channel to Mr. Garlinghouse's profile, the hacker's running of a livestream promoting the scam, and the stealing of $15,000 from viewers' Ripple wallets.[7] MarcoStyle alerted YouTube, and YouTube acknowledged the issue that day but took a week to resolve it.[8] During this time, YouTube verified the hijacked channel as authentic (even though it was masquerading as Mr. Garlinghouse's account).[9]

After the Forbes article, Ripple alleges that it sent YouTube more than 350 takedown notices: 49 related directly to the scam and 305 related to accounts and channels that were impersonating Mr. Garlinghouse or infringing on Ripple's brand, likely to monetize the scam.[10] Ripple alleges that it sent multiple takedown notices for the same conduct because YouTube did not take down the fraudulent channels for days, weeks, or months after notice.[11] New instances of the scam "continued to appear, often amassing thousands of views and creating more victims by the day."[12]

---

[6] *Id.* at 7–9 (¶ 35).

[7] *Id.* at 10 (¶ 40); Paul Tassi, *A YouTuber with 350,000 Subscribers Was Hacked, YouTube verified His Hacker*, Forbes (Nov. 14, 2019), https://www.forbes.com/sites/paultassi/2019/11/14/a-youtuber-with-350000-subscribers-was-hacked-youtube-verified-his-hacker/?sh=23bd01a76fe6, Ex. 8 to Compl. – ECF No. 1-1 at 141–42. The court considers the documents attached to the complaint under the incorporation-by-reference doctrine. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[8] Forbes Article, Ex. 8 to Compl. – ECF No. 1-1 at 142

[9] Compl. – ECF No. 1 at 10 (¶ 40).

[10] *Id.* at 12 (¶ 47).

[11] *Id.* (¶ 48) (14 takedown notices (starting November 12, 2019) about hijacked channel purporting to be Mr. Garlinghouse's channel that resulted in a takedown months later, on February 19, 2020; January 2, 2020 takedown notice that took three weeks to resolve; nine takedown notices (starting January 21, 2020) about channel promoting the scam that remained active until March 18, 2020; January 27, 2020 notice about hijacked channel promoting the scam resolved on February 3, 2020).

[12] *Id.* (¶ 49).

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3

For example, on March 20, 2020, a YouTube user told YouTube about a channel using Ripple's marks and Mr. Garlinghouse's image to promote the scam, YouTube did not take action, and by the next day, 85,000 users viewed the fraudulent video.[13]

4
5

YouTube allegedly profited from the scam because it sold ads to the fraudsters that featured Mr. Garlinghouse's name, infringed on Ripple's trademarks, and promoted the scam.[14]

6
7

According to its guidelines and policies, YouTube removes offending content when it learns about it, including "scams and other deceptive practices."[15]

8
9
10

The parties do not dispute that the court has federal-question jurisdiction over the Lanham Act contributory trademark-infringement claim and supplemental jurisdiction over the state-law claims.[16] 28 U.S.C. §§ 1331, 1367. All parties consented to magistrate jurisdiction.[17]

11
12

## STANDARD OF REVIEW

13
14
15
16
17
18
19

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

20
21
22

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

23
24
25
26
27
28

---

[13] *Id.* at 14 (¶ 52).

[14] *Id.* at 10 (¶ 37).

[15] *Id.* at 6–7 (¶¶ 30–33); YouTube Policies, Ex. 1 to Compl. – ECF No. 1-1 at 2–6; YouTube Community Guidelines Enforcement, Ex. 4 to Compl. – ECF No. 1-1 at 114–122.

[16] *Id.* at 4 (¶¶ 15–16); Mot. – ECF No. 26.

[17] Consents – ECF Nos. 13–14.

United States District Court
Northern District of California

1 the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2 defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a

3 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

4 unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

5 merely consistent with a defendant's liability, it stops short of the line between possibility and

6 plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

7     If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

8 possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co*.,

9 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

10

11

12                                              **ANALYSIS**

12     YouTube moved to dismiss the trademark and state-law claims under Rule 12(b)(6) for failure

13 to state a claim. The court grants the motion with leave to amend.

14

15 **1.   Contributory Trademark Infringement**

16     "To be liable for contributory trademark infringement, a defendant must have (1) intentionally

17 induced the primary infringer to infringe, or (2) continued to supply an infringing product to an

18 infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect*

19 *10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (cleaned up). If the alleged

20 infringer supplies a service (as opposed to a product), then "the court must consider the extent of

21 control exercised by the defendant over the third party's means of infringement." *Id*. A plaintiff

22 must show that the defendant "continued to supply its services to one who it knew or had reason to

23 know was engaging in trademark infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Sols, Inc.*,

24 658 F.3d 936, 942 (9th Cir. 2011).

25     Contributory trademark infringement claims about conduct on an online platform often involve

26 the sale of infringing goods in an online marketplace. In that context, courts have held that "a

27 service provider must have more than a general knowledge or reason to know that its service is

28 being used to sell counterfeit goods. Some contemporary knowledge of which particular listings

are infringing or will infringe . . . is necessary." *Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG, 2016 WL 1089267, at *3 (N.D. Cal. Mar. 21, 2016) (quoting *Tiffany (NJ) Inc. v. eBay Inc.* 600 F.3d 93, 107 (2d Cir. 2010)). Also, "notice of certain acts of infringement does not imply generalized knowledge of — and liability for — others." *Id.* (citations omitted). Thus, in *Spy Phone,* the court held that an app developer's complaint to Google about competing apps' violations of Google's anti-spyware policy was not the same as a trademark complaint. *Id.* at *2, 4. A trademark complaint was a notice of infringement, but a spyware complaint was not. *Id.* at *4. Absent notice of trademark infringement in the form of a trademark complaint, Google was not liable for not removing infringing apps preemptively. *Id.*

The plaintiffs allegedly notified YouTube of the trademark infringement through takedown notices and allege that You Tube "ignored or failed to address many of the[ir] takedown demands."[18] The examples — in subparagraphs to that general allegation — are about delay in taking down the offending channels (not a failure to do so altogether), all in the face of a persistent fraud that apparently had near daily new occurrences.[19] The examples include (1) a takedown notice, 13 subsequent takedown notices, and a hacked channel's remaining active for more than two months until YouTube "took corrective action," (2) a three-week delay before YouTube "addressed" a hacked channel after notice, (3) a takedown notice, eight more takedown notices, and slightly less than two months before YouTube addressed a channel promoting the scam, and (4) a week's delay before YouTube addressed a hacked channel.[20]

The issue thus is whether the plaintiffs' allegations about YouTube's delay in taking down the scam and the hijacked channels — which used Ripple's trademarked content — plausibly plead a claim for contributory trademark infringement.

---

[18] Compl. – ECF No. 1 at 12–13 (¶¶ 48–49).

[19] *Id.* at 12 (¶ 48); *see* Statement.

[20] Compl. – ECF No. 1 at 12 (¶ 48) (referring to YouTube's taking "corrective action" eventually). The court cannot tell whether "taking corrective action " involves removing the channels or instead involved other corrective action. The court thus uses the proxy that YouTube "addressed" the issue.

1  Courts have found that delays of several days (after receipt of a trademark complaint) do not

2  plausibly establish a contributory trademark infringement claim, but delays of at least six months

3  can. *Spy Phone*, No. 15-cv-03756-KAW, 2016 WL 6025469, at *5 (N.D. Cal. Oct. 14, 2016)

4  (collecting cases, including those involving a six-month delay and a six-to-nine-month delay). In

5  *Spy Phone*, a contributory trademark claim survived a Rule 12(b)(6) motion when Google took 18

6  and 27 days to address two trademark complaints. The length of time alone did not plausibly

7  establish a claim, but other fact issues about Google's response to the trademark complaints —

8  such as whether it unjustifiably or purposefully delayed its investigation (and thereby provided

9  services to a known infringer) — meant that the claim survived at the pleadings stage. *Id.*

10  Under these cases, the plaintiffs have not plausibly pleaded a claim for contributory trademark

11  infringement.

12  The plaintiffs allegedly complained about trademark infringement, and they also complained

13  about the misuse of Mr. Garlinghouse's identity.[21] Applying the analysis in *Spy Phone*, the first

14  category is a notice of trademark infringement that required YouTube's response, and the second

15  is not. *Id.*, No. 15-cv-03756-PSG, 2016 WL 1089267 at *4. The complaint lumps the two

16  categories together. The plaintiffs must identify their complaints of trademark infringement

17  (tethered to a specific YouTube user's account) and YouTube's failure to respond or delayed

18  response to the specific complaints.

19  Without a delineation between the two categories, the court cannot evaluate whether YouTube

20  had contemporaneous knowledge of the infringing conduct and continued to supply its services.

21  *Id.*; *Louis Vuitton*, 658 F.3d at 942. As a result, the court cannot "draw the reasonable inference

22  that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Also, the alleged

23  delays here — a week, several weeks, around two months — are shorter than the delays that courts

24  generally have found actionable. (*Spy Phone* had shorter delays of 18 and 27 days, but the delays

25  themselves did not establish a plausible claim; instead, disputed facts about Google's reasons for

26  the delay did. No. 15-cv-03756-KAW, 2016 WL 6025469 at *5 (collecting cases).

27

28  [21] *Id.* (¶ 47).

1   At the hearing, the plaintiffs argued that requiring this specificity imposes a pleading standard

2   that exceeds Rule 8)(a)'s "fair notice" requirement and is the equivalent of pleading the claims

3   with particularity under Rule 9(b), meaning, the who, what, where, when, and how of the

4   misconduct. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). The court is not

5   imposing a Rule 9(b) standard. The plaintiffs do not need to plead all of their evidence.

6   Representative examples — similar to those in paragraph 48 of the complaint but identifying the

7   specific trademark complaints and YouTube's response to those complaints — are sufficient.

8       The plaintiffs' remaining theories for contributory trademark infringement fail for the

9   following reasons.

10      The plaintiffs contend that YouTube had constructive knowledge that the scam was persistent

11  and the tools to eliminate the scam from its platform.[22] This claim turns on the actual notice to

12  YouTube. *Tiffany*, 600 F.3d at 109; *Spy Phone*, No. 15-cv-03756-PSG, 2016 WL 1089267 at *3–

13  4, *id.*, No. 15-cv-03756-KAW, 2016 WL 6025469 at *6. As discussed above, the allegations in the

14  plaintiffs' complaint do not sufficiently differentiate between the trademark notices and the other

15  notices. Thus, the plaintiffs do not plausibly plead a claim.

16      The plaintiffs also contend that YouTube was willfully blind to the scam and failed to prevent

17  it.[23] *See Global-Tech Appliances, Inc. v. S.E.B. SA.*, 563 U.S. 754, 769 (2011); *Spy Phone*, No. 15-

18  cv-03756-KAW, 2016 WL 6025469 at *6. The facts alleged here do not establish a duty to

19  preemptively address the scam based on YouTube's knowledge of the infringements. *Spy Phone*,

20  No. 15-cv-03756-KAW, 2016 WL 6025469 at *6 (analyzing cases and holding that Google did

21  not have a generalized duty — based on knowledge that a vendor was selling counterfeit goods —

22  to preemptively police online vendors). The result in *Spy Phone* applies with greater force here

23  because YouTube is not an online marketplace policing its vendors and instead is a social-media

24  platform hosting its users. Its ability to react to and police hackers is different than an online

25  marketplace's ability to react to and police its vendors.

26

27  [22] Opp'n – ECF No. 29 at 16–20.

28  [23] *Id.* at 20–21.

To illuminate the point, consider the cases that the parties cite: they all involve online marketplaces. (The parties did not cite any case involving similar allegations of trademark infringement on a hijacked social-media platform, and the court did not find any.) The cases establish that an online marketplace is responsible for contributory trademark infringement when — after notice that a vendor is selling infringing products — it allows the vendor to keep selling the infringing products. For example, in *Spy Phone*, Google allegedly allowed a vendor to release an infringing app after notice that the vendor's released app was infringing Spy Phone's trademark. No. 15-cv-03756-KAW, 2016 WL 6025469 at *6. In *Spy Optic, Inc. v. Alibaba, Inc.*, on one occasion, the Alibaba marketplace allowed the infringing vendor to post "multiple infringing products" after the plaintiff identified the trademark infringement. 163 F. Supp. 3d 755, 766 (C.D. Cal. 2015). By contrast, in *Tiffany (NJ) v. eBay Inc.*, eBay took down challenged listings promptly, warned sellers and buyers, canceled fees it earned, and directed buyers not to consummate the sale of the disputed item. 600 F.3d at 106.

The cases illustrate an online marketplace's duty (and ability) to remove a known vendor from the online platform when it knows about the trademark infringement. *Louis Vuitton*, 658 F.3d at 942. Thus, it might be reasonable to hold eBay to a tight time period to discontinue its services to someone selling fake Tiffany or Louis Vuitton products: eBay and its vendors have a business relationship, and eBay can terminate a vendor easily. eBay also derives revenue from the relationship. And if eBay delays an investigation and a takedown, there might be fact issues about whether it purposefully or unjustifiably did so, presumably for self-serving reasons. *Cf. Spy Phone*, No. 15-cv-03756-KAW, 2016 WL 6025469 at *5. That ability to police its vendors arguably makes it more accountable when it does not take action.

An online social-media platform's delay in investigating and removing scams like the one here is not obviously analogous to the marketplace's delay. Investigating a scam — involving phishing and hijacked user credentials — is (at minimum) different and likely more complicated. For one, YouTube does not control a hacker in the same way that a marketplace controls a vendor's ability to sell on the platform. *See Perfect 10,* 494 F.3d at 807. Also, YouTube's investigation involves

legitimate YouTube users and a persistent, evolving scam creating "more victims by the day."[24] Its investigation differs in scope from the marketplace's investigation of its vendor. The impact of notice (or in the language of the cases, "contemporary knowledge" of infringement) is different too. *Spy Phone*, No. 15-cv-03756-PSG, 2016 WL 1089267 at *3. When a marketplace knows about infringing products, it can terminate the infringing vendor. The only thing that matters is notice of the trademark infringement. But when YouTube learns about hacked content that includes trademarked content, the scope of its inquiry also is about protection of data and its users and eliminating the scam.

Moreover, YouTube does not provide services to or profit from a hacker in the same way that a marketplace provides services to and profits from a vendor. *Id.* In some ways, it too is a victim of the hijacking. Its revenues from ads are not obviously equivalent to revenues resulting from a business contract between a marketplace and a vendor.

Ultimately, it may be that the sufficiency of YouTube's response involves factual disputes that are not amenable to resolution on a Rule 12(b)(6) motion, at least as to whether YouTube had contemporaneous knowledge of the infringing conduct and continued to supply its services. *Louis Vuitton*, 658 F.3d at 942.

For now, the court dismisses the contributory trademark claim with leave to amend.

### 2. Section 230 Immunity

Absent a federal claim, the court does not have supplemental jurisdiction over the state claims. 28 U.S.C. § 1367(a). Even assuming that there is a viable federal claim, YouTube is immune under § 230(c)(1) of the Communications Decency Act for the state claims: (1) misappropriation of Ripple's CEO's identity and his right of publicity, in violation of Cal. Civil Code § 3344 and California common law, and (2) a violation of the UCL based on the predicate state-law and federal claims.[25]

---

[24] Compl. – ECF No. 1 at 12–13 (¶¶ 48–49).

[25] *Id*. at 18–21 (¶¶ 75–99).

United States District Court
Northern District of California

1    Under the Communications Decency Act, (1) website operators generally are immune from

2    liability for third-party content posted on their websites, but (2) they are not immune if they create

3    or develop the information, in whole or in part. 47 U.S.C. §§ 230(c)(1) & (f)(3). "Immunity from

4    liability exists for (1) a provider or user of an interactive computer service, (2) whom a plaintiff

5    seeks to treat, under a state law cause of action, as a publisher or speaker of (3) information

6    provided by another information content provider." *Dyroff v. Ultimate Software Grp., Inc.*, 934

7    F.3d 1093, 1097 (9th Cir. 2019) (cleaned up).

8    YouTube is an interactive-computer service.[26] It is undisputed that it did not create any ads:

9    YouTube ads are third-party content, and the at-issue "ads were presented to YouTube by the

10   scammers" here.[27] It is not "responsible, in whole or in part, for the creation or development of the

11   information," and thus, it is immune from liability for the third-party content. 47 U.S.C. §

12   230(f)(3); *cf. Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801–03 (N.D. Cal. 2011) (Facebook

13   created ads, including content, based on users' browsing history, and thus it was not immune

14   under the Act for violating the plaintiffs' statutory right of publicity, among other things).

15   The plaintiffs nonetheless contend that YouTube materially contributed to the scam (and

16   created content) by awarding a "verification badge" — by giving the MarcoStyle hacked channel a

17   badge that it allegedly reserves for "authentic" channels — thereby "communicating to hundreds

18   of thousands of viewers and subscribers that these hacked accounts and channels were 'the official

19   channel of a creator, artist, company, or public figure.'"[28] A website helps to develop unlawful

20   content if it "contributes materially to the alleged illegality of the content." *Fair Hous. Council v.*

21   *Roommates.com, LLC*, 521 F.3d 1157, 1167–68 (9th Cir. 2008). The badge did not materially

22   contribute to the content's illegality here. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 n.4 (9th Cir.

---

[26] Opp'n – ECF No. 29 at 21–26; Reply – ECF No. 33 at 7.

[27] Compl. – ECF No. 1 at 10 (¶ 37).

[28] Opp'n – ECF No. 29 at 22 (quoting Compl. – ECF No. 1 at 3 (¶ 10)).

2016). What made the content illegal was that the scammers hijacked users' content and tricked them into sending their XRP to a digital wallet.[29]

The plaintiffs also contend that YouTube materially contributed to the fraudulent advertisements for the scam by allowing advertisers to display "views" that the video received.[30] Displaying views does not create content, and the plaintiffs' argument thus does not alter the conclusion that YouTube has immunity under § 230(c) for the state-law claims. *Dyroff*, 934 F.3d at 1096; *Kimzey*, 836 F.3d at 1270; *Roommates*, 521 F.3d at 1169.

# CONCLUSION

The court grants the motion to dismiss with leave to amend within 21 days. This disposes of ECF No. 26.

**IT IS SO ORDERED.**

Dated: November 20, 2020

_____
LAUREL BEELER
United States Magistrate Judge

---

[29] The complaint's allegations do not establish that verification of YouTube accounts promotes the scam either. *See, e.g.*, Compl. – ECF No. 1 at 11 (¶ 43).

[30] Opp'n – ECF 29 at 25 (citing Compl. – ECF No. 1 at 10 (¶ 37)).